# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 2000 Session

## STATE OF TENNESSEE v. MARCUS ASKEW

**Appeal from the Criminal Court for Shelby County**
**No. 98-07544-45-46       Joseph B. Dailey, Judge**

---

### No. W1999-00584-CCA-R3-CD - Decided September 14, 2000

---

The defendant was indicted on three counts of attempted first degree murder. He entered pleas of guilty to three counts of attempted second degree murder. As part of the negotiated settlement he was sentenced as an especially mitigated offender to serve concurrent sentences of 7.2 years on each count. The manner of service was left for determination by the trial court. In this direct appeal, defendant asserts that the trial court should have granted alternative sentencing. We affirm the judgment of the trial court.

**T. R. A. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

CORNELIA A. CLARK, SP. J., delivered the opinion of the court, in which DAVID H. WELLES, J. and ALAN E. GLENN, J., joined.

Christine W. Stephens and Howard Wagerman, for appellant, Marcus Askew.

Paul G. Summers, Attorney General & Reporter, Kim R. Helper, Assistant Attorney General, William L. Gibbons, District Attorney General, David C. Henry, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On November 19, 1997, deputies of the Shelby County Sheriff's Department attempted to execute a search warrant for drugs at a residence occupied by the defendant, Marcus Askew, and his brother, Zerwin Askew. Deputy Bolen testified that the deputies announced their presence with loud shouts and knocks about four or five times before entering. The door was then forced open and several detectives entered the apartment. As Deputy Bolen and Detective Latimer went down a hallway they heard shots fired in the area behind them. Deputy Bolen then kicked open a bedroom door and encountered gunfire aimed at him. He saw the defendant crouched behind a bed in the corner of the bedroom, pointing a gun at him and continuing to fire. One round from the defendant's gun struck Deputy Bolen in the hand and knocked his gun away. He fell back into Detective Latimer, who grabbed him, pulled him out of the bedroom, into the living room, and eventually

outside to a walkway near the parking lot. Deputy Bolen could continue to hear sporadic gunfire from inside. Deputy Bolen also testified that two other officers entered a second bedroom, where defendant's brother Zerwin Askew was located. They found Zerwin with a handgun pointed at them and they began firing at him.

Deputy Randy McCowen testified that he was also part of the entry team on November 19. He confirmed that the officers knocked and announced their presence before entering. Deputy McCowen ultimately entered the room where Zerwin Askew was located. He stated that once the shooting started "it sounded like a war".

Deputy Scott Chambers testified that, during the November 19 incident, he was assigned to cover the parking lot and back balcony in case someone tried to jump off the balcony and leave. He was in full uniform. He stated that as the entry team was going up the front stairs and knocking and announcing, the balcony door opened. Initially no one came out. After the gunfire started, an individual he identified as the defendant came onto the balcony and began shooting at him and Lieutenant Mark Robertson. The defendant shot several rounds at the two officers. Deputy Chambers ultimately opened fire and struck the defendant, who fell backwards inside the door to the apartment. Lieutenant Robertson testified that, while he never saw the person who came onto the balcony, he heard bullets whiz by his head as he attempted to get to cover.

The defendant testified that he did not hear anyone knock and announce before attempting to kick his front door in. When he saw the front door "caving in" he became very apprehensive, because two months earlier his brother had been shot several times. More recently, the individual who shot his brother had made threats that the matter was not over yet. Therefore, when the defendant saw his door opening he believed that the shooter had returned, and went to his bedroom to get his gun. While the defendant was in his bedroom he heard shots being fired from another location. The defendant then fired his gun back before realizing that he was shooting at sheriff's department officers. The defendant did not remember going out onto the balcony from his bedroom, or shooting at anyone there. He stated only that he knew he was shot by someone in the parking lot. He testified that he did not believe there were any drugs in the apartment.

On cross-examination the defendant admitted that in his first statement to police after the shooting, he indicated that he and his brother were playing video games at the time of the entry. His brother's first statement was inconsistent, claiming that he had just awakened and was in the bathroom taking a bath when the officers entered. The defendant stated that he never saw any of the officers wearing insignia identifying them as employees of the sheriff's department. He also never heard anyone knock or announce an intention to enter. Defendant further acknowledged that the officers found a large bundle of marijuana in the apartment, and also located a small amount of marijuana inside a car that the defendant drove.

Defendant testified that he was twenty-one (21) at the time of the offense. He had a high school diploma and was, at the time of the sentencing hearing, enrolled at Shelby State Community College. He worked at the Fairfield Inn about 20 - 25 hours per week. He lived with his mother and

helped her care for her parents, who also resided in the same location. He served "Meals on Wheels" to senior citizens. Defendant had no prior adult criminal history. He acknowledged that he was convicted of a shoplifting violation at the age of fourteen (14) and a curfew violation about a year after that. He also admitted that he had smoked marijuana on one occasion in approximately 1994.

Defendant was indicted for three counts of attempt to commit first degree murder, a Class A felony. On July 29, 1999, defendant entered guilty pleas to three counts of the lesser offense of attempt to commit second degree murder, a Class B felony. Pursuant to the plea agreement he was sentenced as a mitigated offender to serve 7.2 years on each count, and the counts were run concurrent to one another. Issues relating to the manner of service of the sentence were reserved to be determined by the trial court after a hearing.

On September 2, 1999, the trial court conducted a hearing to determine whether defendant was entitled to receive alternative sentencing. By that time defendant had served approximately eleven (11) months in pretrial detention. He testified and presented two additional witnesses. The state presented three witnesses. The defendant requested that he be allowed to serve the remainder of his sentence on probation After hearing all evidence, the trial court denied his request.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with the presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. §40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. §§40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. The defendant has the burden of demonstrating that the sentence is improper. *Id.*

Initially we note that, because defendant's sentence is eight (8) years or less and none of the statutory exceptions apply, defendant was eligible for probation. Tenn. Code Ann. §40-35-303(a). He was not eligible for the Community Corrections Program. *See* Tenn. Code Ann. §40-36-106(a). However, even though the defendant was <u>eligible</u> for probation, he was not automatically entitled to it as a matter of law. Tenn. Code Ann. §40-35-303(b). Under Tennessee law an especially mitigated or standard offender convicted of a Class C, D, or E felony is generally presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. §40-35-102(6). Because attempted second degree murder is a Class B felony, there is no presumption that this defendant is a favorable candidate for alternative sentencing.

When determining suitability for alternative sentencing, the sentencing court considers the following factors: (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation, including the risk that, during the period of the alternative sentence, the defendant will commit another crime; (3) whether imposition of an alternative sentence of confinement would unduly depreciate the seriousness of the offense; and (4) whether a sentence of confinement would provide an effective deterrent to others likely to commit similar crimes. Tenn. Code Ann. §40-35-210(b)(4), -103(5), - 103(1)(B); *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

The trial court denied defendant's request for alternative sentencing based on the seriousness of the offense and defendant's lack of candor with the court. The general rule is that "in order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree', and the nature of the offense must outweigh all factors favoring a sentence other than confinement". *Bingham*, 910 S.W.2d at 455. The offense in this case was clearly of an excessive and reprehensible nature. The defendant shot point blank at police officers who were attempting to perform their official duties by executing a valid search warrant. He not only shot at those officers inside his home, but also at those outside in the parking lot, who posed no immediate threat to him.

The record also supports the trial court's finding that defendant demonstrated a lack of candor toward the court, and we hold that this also was a proper basis for a denial of alternative sentencing. This court has previously stated that a defendant's lack of candor to the court reflects poorly on the defendant's rehabilitative potential and thus, is a basis for denial of alternative sentencing. *State v. Leggs*, 955 S.W.2d 845, 851-52 (Tenn. Crim. App. 1997). The record indicates that during the sentencing hearing, defendant maintained that he never heard the officers knock and announce their intentions, he never saw identification or uniforms on any of the officers, and he had no recollection of going onto the balcony and shooting at the officers outside. He also claimed not to know anything about the large amount of drugs and the scales found in his home. The trial judge found these statements incredible. We agree.

Although Askew has only a minimal criminal history and has been self-supporting, we find that the record justifies the sentence imposed Based on the circumstances of the offense and defendant's lack of candor to the court, we hold that the trial court did not abuse its discretion when it denied alternative sentencing in this case. Accordingly the judgment of the trial court is affirmed.

_____
CORNELIA A. CLARK, SPECIAL JUDGE